# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs May 21, 2014

## STATE OF TENNESSEE v. JAMES WILLIAM TAWATER

**Appeal from the Circuit Court for Robertson County**
**No. 74CC22012CR621     Michael R. Jones, Judge**

---

**No. M2013-02126-CCA-R3-CD - Filed September 29, 2014**

---

Defendant, James William Tawater, was indicted for one count of Class D felony theft of property of $1,000.00 or more in value. A jury found him guilty as charged. The trial court imposed a sentence of six years as a Range II multiple offender. The manner of service of the sentence was ordered to be an alternative sentence of probation, served by split confinement pursuant to Tennessee Code Annotated section 40-35-306, with one year to be served in the county jail followed by five years of probation under the supervision of Community Corrections. Defendant presents three issues in his appeal: (1) the evidence was insufficient to support the conviction; (2) the trial court abused its discretion by imposing the sentence ordered; and (3) the trial court abused its discretion when it determined the amount of restitution owed by Defendant and by failing to ascertain Defendant's ability to pay restitution. We affirm the conviction and the length and manner of service of the sentence. However, we reverse the restitution portion of the sentence and remand for a new hearing regarding restitution.

**Tenn. R. App. P. 3 Appeal as of Right;**
**Judgment of the Circuit Court Affirmed in Part; Reversed in Part; and Remanded**

THOMAS T. WOODALL, P.J., delivered the opinion of the court, in which D. KELLY THOMAS, JR. J., joined. JEFFREY S. BIVINS, J., not participating.

Roger E. Nell, District Public Defender; Rosemary Thomas, Assistant Public Defender; and Collier W. Goodlett, Springfield, Tennessee, for the appellant, James William Tawater.

Robert E. Cooper, Jr., Attorney General and Reporter; Meredith DeVault, Senior Counsel; John Wesley Carney, Jr., District Attorney General; and Jason White, Assistant District Attorney General, for the appellee, the State of Tennessee.

**OPINION**

*Facts*

In April 2012, Defendant had been employed for several years by the victim, Gary Roberts, d/b/a/ Roberts Brothers Coach Leasing Company (hereinafter "Roberts Brothers Coach" or "the company") in Springfield, Tennessee. The business leased customized coach buses for touring by people in the entertainment business. Defendant was a mechanic and a well qualified maintenance worker and "fix-it" employee. He routinely worked on coach buses wherever they might be located in the United States. When necessary, he took parts with him to replace broken parts on the buses. He sometimes brought back cash to Roberts Brothers Coach which was given to him by the company's bus drivers. The drivers had been given the cash by an entertainer's promoter for reimbursement of fuel expenses paid with the company's fuel card.

The company had leased three coach buses to a rock band in April 2012. On about April 30, 2012, these coach buses were in Chattanooga and the company was notified that some repairs and maintenance work needed to be done on at least one of the buses. Defendant drove to Chattanooga on the morning of May 1, 2012, and took with him the following items of property belonging to the company: (1) a Samsung Galaxy cellular phone issued to Defendant and worth between $200.00 and $250.00; (2) a reconditioned part called an "inverter," worth approximately $650.00, to replace a bad inverter on one of the buses; (3) nine drawer "bullet latches" worth approximately $10.00 each; (4) a new HVAC controller box worth between $475.00 and $500.00; and (5) a reconditioned CB radio unit to replace a malfunctioning CB radio on one of the buses. Defendant was also to receive and return to the company office cash paid for fuel expense reimbursement in an amount the evidence showed to be $1,803.00. It was standard company policy, known and followed by Defendant for several years, that he was to return to the company any replaced and broken inverter or CB radio, so that such items could be reconditioned for use again. A defective and replaced HVAC controller box had to be scrapped because that item could not be reconditioned.

One of the bus drivers who observed Defendant perform his work in Chattanooga on May 1, 2012, testified at trial. The bus driver testified that the cash for fuel expense reimbursement (belonging to Roberts Brothers Coach) was given to Defendant. The bus driver testified that Defendant: (1) put a new HVAC controller box in one of the coach buses, (2) attached two bullet latches to drawers and gave two others to another bus driver, and (3) "swapped out" a CB radio on one bus. Although Defendant had a reconditioned inverter with him, he did not install it. Before Defendant left Chattanooga, he told the bus driver that he was "going back to the shop."

A Springfield Police Department detective testified that he received a report and began an investigation on May 3, 2012. He obtained a warrant for the arrest of Defendant on May 10, 2012.

Defendant did not return to Roberts Brothers Coach on May 1, 2012, and in fact, never returned to work. His employer, Gary Roberts, began trying to call Defendant on Defendant's cellular phone owned by the company, but Defendant did not answer or return the phone calls. Mr. Roberts called Defendant five to ten times per day for several days. On May 3, 2012, Mr. Roberts made what he testified was a "missing person" report about Defendant to the police. At the time of trial in July 2013, Defendant had not given the $1,803.00 cash to Roberts Brothers Coach, and he had not returned the Samsung Galaxy cellular phone, the reconditioned inverter, or any of the replaced parts. Defendant did not have permission to keep the cash, the phone, and the parts placed in his possession.

Defendant testified that he decided to quit his job at Roberts Brothers Coach while he was on his way back to Springfield from Chattanooga on May 1, 2012. Defendant said that he did not put the reconditioned inverter in any bus, and kept it in his possession. He placed the CB radio that he brought from Springfield into one of the coach buses and left the malfunctioning CB radio in Chattanooga with a company bus driver named Alan Hickey, who did not testify at trial. Defendant testified that he had stored his boat, motor, trailer, and a vehicle on Roberts Brothers Coach's business property. He also testified that he still had some tools and a tool container at the company's shop. Defendant stated that he had intended, prior to his arrest, to swap the company's property (cash and parts) for his property still located at the company shop. He admitted keeping $1,803.00 cash that belonged to Roberts Brothers Coach and the company's cellular telephone provided for his use. Defendant was paid weekly, but was not paid for the week ending May 1, 2012. Gary Roberts testified that because Defendant never came back to work after May 1, 2012, Defendant never turned in the number of hours he had worked his last week, which was a condition of his obtaining a paycheck. As noted above, Defendant admitted that he kept the $1,803.00 cash owed to Roberts Brothers Coach and the cellular phone as well as the parts entrusted to him, but he felt he was entitled to a set-off or a swap of these items for access to and possession of his last paycheck (Defendant claimed he was owed $1,900.00), his tools, and his vehicle and boat, motor, and trailer stored at the company.

At the sentencing hearing, Gary Roberts of Roberts Brothers Coach testified on direct examination by the State as follows concerning the issue of restitution:

> Q.  And first let's talk about restitution. I believe at trial you said the amount of cash taken and not returned was what?

A.     I believe it was 18 hundred and three dollars, some odd cents.

Q.     And have you gotten any of that back?

A.     No, sir.

Q.     And there was also at trial some talk about some tools, and some hadn't been used and some was used. Do you know a value, about, total on those tools? That's not - - well, let me ask you: Has any of those been returned as well?

A.     They have not. I don't know the value without looking at my notes somewhere.

Q.     As for restitution, are you primarily asking the Court, if the Court orders restitution, for the [$1,803.00] in cash?

A.     Yes.

Defendant also testified at the sentencing hearing. He mentioned the $1,803.00 in cash twice during his testimony. First, he testified during cross-examination by the State that, "If I need the 18 hundred [sic] dollars, I've got it put up." Later during cross-examination, when the prosecutor stated that Defendant had testified that he had saved up "18 hundred [sic] dollars," Defendant corrected the prosecutor and said, "No, I got somebody that will give me 18 hundred [sic] dollars back now." During the trial, the prosecutor asked Defendant if he had used the $1,803.00 to purchase drugs. Defendant replied "No, sir. That is what I am accused of, but that ain't what I done. I've got his money. I have done without a lot because of that."

Other evidence at the sentencing hearing revealed that Defendant, age 52 at the time of the trial in July, 2013, had been convicted of three counts of Class E felony theft in 1995, and one count of Class D felony burglary and one count of Class D felony theft in 1996. In addition Defendant had multiple misdemeanor convictions between 1991 and 1994, including at least three for driving while his driver's license was suspended, in addition to misdemeanor theft, criminal trespass, and assault. In November of 2009, after being stopped by police for failure to maintain his vehicle in a lane of traffic, Defendant was charged with and ultimately pled guilty to unlawful possession of a schedule II drug and to possession of drug paraphernalia. He was given a suspended sentence, which was revoked in 2011 after a violation of probation warrant was filed and Defendant appeared in court. The presentence

report shows that Defendant had violated sentences of probation at least three times over the course of his criminal career.

The trial court sentenced Defendant to a sentence of six years as a Range II offender, which is exactly the mid-point of the range for a Class D Range II sentence. Tenn. Code Ann. § 40-35-112(b)(4). The trial court considered, and applied, one statutory enhancement factor: Defendant had a previous history of criminal convictions in addition to the two Class D or E felony convictions necessary to enhance the sentence to Range II. Tenn. Code Ann. § 40-35-114(2). The trial court applied two statutory mitigating factors: Defendant's criminal conduct neither caused nor threatened serious bodily injury, and Defendant was employed. Tenn. Code Ann. §§ 40-35-113(1) and (13). In reaching the determination that a sentence of six years was appropriate, the trial court stated that most of Defendant's prior convictions had occurred several years prior to the theft in this case. Also, the trial court noted that Defendant had successfully completed the drug court program in Davidson County. Facts weighing against Defendant were the relatively recent conviction for possession of cocaine and the subsequent violation of probation for the conviction in that case.

The trial court stated that despite the fact Defendant was not a person to be considered as a "favorable candidate" for alternative sentencing due to his status as a Range II offender, the trial court had decided to impose an alternative sentence. As to the manner of service of the sentence and the amount of restitution, the trial court ruled,

> I have, as I said, reviewed my notes for restitution purposes. Mr. Davis, the parts manager, testified to some of these matters. There's an inverter, latches, controller box and were not returned, not used. That totals 12 hundred and 15 dollars, six 50, $10 times nine, $475, and the 18 hundred is fixed. I - - well, it's 18 03 or hundred, using 18 hundred. So restitution is going to be $3,015.00. The Court cannot offset these matters. There's really nothing the Court can do as far as [Defendant's] property. Mr. Roberts said he - - [Defendant] never presented with him any hours, so paying him for that is not a matter for the Court to consider at this point.
>
> Now, service is - - under [T.C.A] 40-35-103 sentences involving confinement should be based on the following considerations: Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct. Certainly this Defendant has a very long history of criminal conduct. And, as I said, again, what is basically hard for me to understand, that he goes through all of this, through the rehabs, and then comes back [in] 2009 [with] possession of cocaine and drug

-5-

paraphernalia. Basically went for 13 year without, at least, any convictions. Age 35 to 48. Before that time he was in an out of court, beginning at the age of 30. Multiple 30's; 31, 32, 33, 34, 35 then 48.

I'm going to order that he serve a sentence of split confinement; one year in the Robertson County Jail followed by community corrections. All right, anything else?

Neither Defendant nor the State addressed restitution in closing argument at the sentencing hearing. The State asked the trial court to order Defendant to fully serve a sentence between six years and eight years in the Tennessee Department of Correction. Defendant's counsel argues on appeal that no incarceration should be required, but that Defendant should be sentenced to serve four or five years, suspended on probation, "with restitution so that [the victim] is made whole for whatever [losses] he believes that he has suffered."

**ANALYSIS**

***Sufficiency of the Evidence***

When an appellate court evaluates the sufficiency of the evidence to support a conviction, the appellate court must determine whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). When making this determination, the prosecution is afforded the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences which may be drawn therefrom. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). Questions regarding the weight to be given the evidence, the credibility of the witnesses, and the factual issues raised by the evidence are resolved by the trier of fact. *Id*. A verdict of guilt removes the presumption that the defendant is innocent, and imposes a presumption that the defendant is guilty. Thus, upon conviction the defendant bears the burden of showing why the evidence is insufficient to support the verdict. *State v. Rice*, 184 S.W.3d 646, 661 (Tenn. 2006); *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). The standard of review is the same whether the conviction is based on direct or circumstantial evidence. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011); *State v. Brown*, 551 S.W.2d 329, 331 (Tenn. 1977).

Defendant was convicted of Class D felony theft of property. That offense is defined as follows:

A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent.

Tenn. Code Ann. § 39-14-103(a).

If the value of the property which is the subject of the theft is $1,000.00 or more but less than $10,000.00, the offense is a Class D felony. Tenn. Code Ann. § 39-14-105(a)(3).

On appeal, Defendant specifically asserts that the State failed to prove beyond a reasonable doubt the essential element of theft of property that Defendant intended to deprive the victim of the property.

"Deprive"as to criminal charges, is statutorily defined as follows:

"Deprive" means to

(A) Withhold property from the owner permanently or for such a period of time as to substantially diminish the value or enjoyment of the property to the owner;

(B) Withhold property or cause it to be withheld for the purpose of restoring it only upon payment of a reward or other compensation; or

(C) Dispose of property or use it or transfer any interest in it under circumstances that make its restoration unlikely;

Tenn. Code Ann. § 39-11-106(a)(8).

Defendant's argument on appeal essentially challenges the credibility of the witnesses and the weight that the jury should have given what Defendant asserts is the credible evidence. Defendant argues that while the evidence showed he still had in his possession more than $1,000.00 of the victim's property, Defendant "denied intending to keep it." Defendant states in his brief that he would "reap no financial benefit" by permanently keeping the victim's property. Defendant argues the company had in its possession items belonging to Defendant including, "a car, a boat, and various other high value items." Despite his own testimony that he had desired to swap the victim's property in his possession for access to his property at the victim's premises, Defendant argues "there is no evidence

that [Defendant] held the property exclusively as a means to exchange it for other compensation."

Taken in the light most favorable to the State, with all reasonable and legitimate inferences drawn therefrom, Defendant had in his possession property of Roberts Brothers Coach of a value more than $1,000.00, including cash in the amount of $1,803.00. Defendant was obligated to return all items to the victim no later than the day after he worked in Chattanooga on May 1, 2012. Defendant never returned to work. Defendant never contacted the victim until after Defendant was aware that an arrest warrant had been issued. Through the date of the sentencing hearing, Defendant had kept possession of the victim's property worth more than $1,000.00. Defendant claims that it defies "common sense" to believe he would unlawfully obtain or exercise control of property of the victim worth far less than the items of Defendant's property in possession of the victim. In order to prove theft of property, it is not required for the State to prove a defendant made a logical decision when he or she decided to commit the offense. The evidence is legally sufficient to sustain the conviction. Defendant is not entitled to relief on this issue.

***Length and Manner of Service of Sentence***

The sentence range as a Range II offender of a Class D felony is not less than four years nor more than eight years. Tenn. Code Ann. § 40-35-112(b)(4). As noted above, the trial court set the length of Defendant's sentence at six years. The trial court imposed an alternative sentence of probation, pursuant to Tennessee Code Annotated section 40-35-306(a): split confinement, with incarceration for one year in the county jail, followed by five years of probation supervised by Community Corrections. Pertinent to this case, Tennessee Code Annotated section 40-35-102 provides in part as follows:

> The foremost purpose of this chapter is to promote justice, as manifested by § 40-35-103. In so doing, the following principles are adopted:
>
> * * *
>
> (3)  Punishment shall be imposed to prevent crime and promote respect for the law by
>
> (A)  Providing an effective general deterrent to those likely to violate the criminal laws of this state;

(B) *Restraining defendants with a lengthy history of criminal conduct*;

(C) Encouraging effective rehabilitation of those defendants, where reasonably feasible, *by promoting the use of alternative sentencing*, and correctional programs that elicit voluntary cooperation of defendants; and

(D) Encouraging restitution to victims where appropriate;

Tenn. Code Ann. § 40-35-102(3) (emphasis added).

Again, as pertinent to the case *sub judice*, Tennessee Code Annotated section 40-35-103 provides in part as follows:

To implement the purposes of this chapter, the following principles apply:

(1) Sentences involving confinement should be based on the following considerations:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

* * *

(B) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant;

Tenn. Code Ann. § 40-35-103(1)(A)&(C).

Defendant argues on appeal that the trial court abused its discretion by failing to impose the minimum sentence length of four years with imposition of the "least severe manner of service" with the entire sentence to be suspended and served on probation. Defendant acknowledges recent decisions by our supreme court that modified the standard

of appellate review of the length and manner of service of sentences. *See State v. Bise*, 380 S.W.3d 682 (Tenn. 2012) and *State v. Caudle*, 388 S.W.3d 273 (Tenn. 2012). However, Defendant argues that the trial court in his case fell woefully short of what it should have done carrying out the dictates of *Bise* and *Caudle*. Defendant asserts that,

> It would be appropriate to hold that trial courts must specifically address the several purposes and principles of sentencing to ensure that the trial courts have indeed complied with the statutes and the Supreme Court's direction . . . . whereas the trial courts were previously only compelled to explain in some detail why it applied or did not apply mitigating and enhancement factors[,] now, *they ought to be compelled to also explain in detail how the trial court considered and evaluated the various purposes and principles of sentencing in* Tenn. Code Ann. § 40-35-102 and -103. Under previous law, it seems that mere lip service ("the court has considered the purposes and principles of sentencing") was sufficient. *Now*, more *than a mere acknowledgement of the existence of those purposes and principles is and ought to be required.*

In support of this argument, Defendant relies on a footnote in *Bise* which states in part that trial courts must adhere to the statutory requirement set forth in Tennessee Code Annotated section 40-35-210(e), being, "[w]hen the court imposes a sentence, *it shall place on the record, either orally or in writing, what enhancement or mitigating factors were considered, if any, as well as the reasons for the sentence* in order to ensure fair and consistent sentencing." *Bise*, 380 S.W.3d at 705-06 n. 41.

In *Bise*, our supreme court held that "today we adopt an abuse of discretion standard of review, granting a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *Id.* at 707. This standard of review was also applied by our supreme court in *Caudle* regarding questions pertaining to probation or any other alternative sentence. *Caudle*, 388 S.W.3d at 279. We do not agree with Defendant's argument that *Bise* mandates, or should mandate, a detailed discussion by a trial court as to each statutory principle or purpose regarding sentencing whenever a sentence is imposed. The footnote in *Bise* relied upon by Defendant only requires the trial court to state the specific enhancement and/or mitigating factors considered, and the reasons for the sentence in compliance with Tennessee Code Annotated section 40-35-210(e). *Bise*, 380 S.W.3d at 705-06 n. 41.

In this case the trial court considered one enhancement factor to be applicable: that Defendant has a previous history of criminal convictions in addition to those necessary to establish the appropriate range of punishment. Tenn. Code Ann. § 40-35-114(1). The trial

-10-

court considered two mitigating factors to be applicable: Defendant's criminal conduct neither caused nor threatened serious bodily injury, Tenn. Code Ann. § 40-35-113(1) and Defendant was employed at the time of sentencing, Tenn. Code Ann. § 40-35-113(13) ("Any other factor consistent with the purposes of this chapter.")

Also, the trial court explained in detail the reasons for the sentence. The trial court noted that Defendant's extensive criminal record would normally justify the maximum sentence of eight years, except most of those offenses were older, having occurred in 1994 and 1995. However, the trial court noted that a very large concern was Defendant's misdemeanor cocaine conviction in 2009, after previously attending two drug treatments and his subsequent violation of probation on this conviction in 2011 for "failure to report." The trial court also noted that Defendant, as a Range II offender, and thus not a standard offender or an especially mitigated offender, would *not* be a person who would be considered a favorable candidate for alternative sentencing. *See* Tenn. Code Ann. § 40-35-102(5) and (6)(A). However, the trial court still granted the alternative sentence of split confinement, *see* Tenn. Code Ann. § 40-35-104(c)(5), which is in compliance with the sentencing principle encouraging alternative sentencing where appropriate as found in Tennessee Code Annotated section 40-35-102(3)(C).

Application of the abuse of discretion standard of review, with a presumption of reasonableness, is appropriate in this case because the trial court complied with the dictates of Tennessee's sentencing scheme as set forth in *Bise* and *Caudle*. Under this review, we conclude the trial court did not err in its sentencing decision. Defendant is not entitled to relief on this issue.

### *Restitution*

Defendant argues on appeal that the trial court abused its discretion in determining the amount of restitution and by failing to ascertain Defendant's ability to pay restitution. We set forth above the trial court's entire ruling as to the amount of restitution owed. The State erroneously asserts that Defendant has waived on appeal any issue as to the *amount* of loss to the victim because Defendant did not object at trial to the parts' manager's testimony regarding value of the parts turned over to Defendant, and Defendant failed to object to the trial court using its notes to determine the amount of the pecuniary loss to the victim. The absence of any objections by Defendant is not determinative. The issues raised by Defendant can be addressed based upon the evidence presented at the trial and the sentencing hearing.

As to Defendant's ability to make restitution, the State concedes that this issue should be remanded to the trial court pursuant to the requirements in Tennessee Code Annotated section 40-35-304(d), which states in full, "In determining the *amount and method of*

*payment* or other restitution, the could *shall* consider the financial resources and future ability of the defendant to pay or perform." (emphasis added). Thus both the amount and the method of payment must be determined after the trial court has considered the financial resources of Defendant and his future ability to pay. The trial court failed to comply with Tennessee Code Annotated section 40-35-304(d), and by doing so, abused its discretion.

We must remand this case solely for a restitution hearing to determine the amount of restitution owed and the method of payment. We take judicial notice that the trial judge who presided over this case has retired. We also note the trial court concluded that restitution is owed for all of the "bullet latches" and for the HVAC controller box. This appears to be contrary to undisputed evidence in the record. Also, in Mr. Roberts' testimony at the sentencing hearing, he indicated he only sought restitution of the $1,803.00 cash. Further, Defendant's testimony at the sentencing hearing indicated he could immediately pay the cash restitution. Upon remand, the trial judge who will make the decision regarding restitution will have the discretion to reopen the proof if necessary to determine the amount of restitution and the method of its payment.

## CONCLUSION

The conviction is affirmed. The trial court's order as to the length and manner of service of the sentence is affirmed. The order of restitution is reversed and this matter is remanded for the trial court to determine restitution in compliance with Tennessee Code Annotated section 40-35-304(d).

_____
THOMAS T. WOODALL, JUDGE